IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYREE LAWSON | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-1739 |
| | : | |
| TAMMY FERGUSON, et al. | : | |

**McHugh, J.**                                                                                              February 8, 2022

## MEMORANDUM

This is a pro se civil rights action in which a prisoner in state custody alleges that Defendants conspired to confiscate or destroy his property in violation of his First Amendment and Due Process rights. Plaintiff's complaint fails to state a claim, and I will therefore grant Defendants' Motion to Dismiss.

### I.     Factual Background

Pro se Plaintiff, Tyree Lawson, is currently in state custody at SCI-Phoenix. First Am. Compl. ¶ 1, ECF 5.[1] Plaintiff filed this suit for monetary damages after the Defendants lost his legal and personal property during his transfer to SCI-Phoenix on July 13, 2018. *Id*. ¶ 6. Plaintiff named as Defendants former SCI-Phoenix Superintendent Tammy Ferguson, Correctional Officer

---

[1]In response to Defendants' Motion to Dismiss, Plaintiff filed a motion for leave to file an amended complaint and attached his proposed Second Amended Complaint ("SAC"), ECF 29. Plaintiff then also submitted an appendix with 11 exhibits, ECF 30. In its review, the Court has considered all Plaintiff's allegations in the First Amended Complaint ("FAC"), ECF 5, as well as the proposed Second Amended Complaint, ECF 29, and the appendix, ECF 30. I will consider the Second Amended Complaint to be filed and construe the Defendants' Motion to Dismiss, ECF 24, to address both amended complaints. No purpose would be served in making the Commonwealth also respond to the Second Amended Complaint. *See Wallace v. Fegan*, 455 F. App'x 137, 139 (3d Cir. 2011) (non-precedential) (considering all of a pro se litigant's separate submissions in determining whether his allegations state a claim upon which relief can be granted).

Wayne Harriger, Correctional Officer Brett Thornton, and two other "unknown Does of Pa. DOC's Corrections Emergency Response Ream."[2]  SAC ¶ 3.

A brief recitation of some of Plaintiff's administrative history is necessary, as Plaintiff alleges that prison officials lost his property to retaliate against him for having filed grievances in the past.  Previously, Plaintiff had been incarcerated at SCI-Forest.  FAC ¶ 15.  While at SCI-Forest, Plaintiff filed thirty-nine grievances and numerous civil complaints against prison officials regarding his conditions of confinement.  SAC ¶ 9.  In February 2014, Plaintiff alleges that one of the Defendants in this case, Officer Harriger, who was at SCI-Forest at the time, "seized" and "tampered" with Plaintiff's legal materials while searching his cell at SCI-Forest.  FAC ¶ 20.  Plaintiff filed a grievance against Officer Harriger.  *Id*.  In 2014 and 2015, Plaintiff filed grievances and civil complaints against a dentist and nurse at SCI-Forest for failing to treat his medical needs.  *Id*. ¶¶ 23, 35.  Mr. Lawson also filed a series of grievances and civil complaints against SCI-Forest housing managers for denials of past grievances and transfers to different units within the prison.  *Id*. ¶¶ 24, 27.  From 2016 to early 2017, Plaintiff filed a series of grievances and civil actions against SCI-Forest Correctional Officers and the Superintendent for seizure and destruction of his property, "gross harassment," and retaliation.  *Id.* ¶¶ 28, 29, 34, 35, 37, 38, 40.

---

[2] Plaintiff's FAC refers to Harriger as Hellerman and Thornton as Thorn.  In Defendants' Motion to Dismiss, Defendants identify Hellerman as Harriger and Thorn as Thornton.  ECF 24.  Plaintiff's SAC makes the correction and names Harriger and Thornton as defendants.  This memorandum refers to them accordingly.

In Plaintiff's FAC, he also names Dombroski, a Correctional Officer Three (Lieutenant) of SCI-Forest, ¶ 3, and Wonderland, a Correctional Officer at SCI-Forest, ¶ 5.  In their Motion to Dismiss, Defendants state that the identities of Dombroski and Wonderland "are not yet known, and undersigned counsel is unaware of service on any other individuals in this case."  ECF 24.  Plaintiff's SAC removes the references to Dombroski and Wonderland and only identifies unknown Does.  SAC ¶ 3.

Plaintiff's complaint is dismissed as to both the named and the unidentified defendants.  *See Breslin v. City and County of Philadelphia*, 92 F.R.D. 764 (E.D. Pa. 1981) (dismissal of complaint against identified defendants warrants dismissal of unnamed defendants as well).

In 2017, Plaintiff was transferred to SCI-Graterford. *Id*. ¶ 42. In 2018, upon Graterford's closure, Plaintiff was transferred to SCI-Phoenix. Defendant, Superintendent Tammy Ferguson, facilitated and directed a group of prison staff, known as the Corrections Emergency Response Team ("CERT"), to transfer the prisoners and their property to SCI-Phoenix. *Id*. ¶ 46. The CERT team included Defendants Harriger and Thornton. In preparation for the move, Defendant Ferguson announced that each prisoner's property would be limited to one footlocker and two record boxes. *Id*. ¶ 47. After multiple requests, Plaintiff successfully obtained an authorized additional box for overflow legal materials. *Id*. ¶¶ 49-52.

On July 13, 2018, Plaintiff alleges that an unknown Pennsylvania Corrections Officer wearing a uniform with the CERT team logo entered Plaintiff's cell and loaded his property into a transportation laundry cart. *Id*. ¶¶ 56-57. Specifically, Complaint alleges that the officer loaded one footlocker containing various case files and legal documents, two record boxes with personal items, one authorized additional legal box,[3] and various miscellaneous personal items. *Id*. ¶ 58. Defendant Thornton took possession of the cart with Plaintiff's property and stated that "he had it." *Id*. ¶ 62. Plaintiff was then transported to SCI-Phoenix. *Id*. ¶ 64.

On the evening of July 13, 2018, unknown CERT officers visited Plaintiff in SCI-Phoenix and told him to come and get his possessions. SAC ¶ 31. Defendants Harriger and Thornton were standing around the laundry cart with his possessions. FAC ¶ 67. When he picked up his footlocker, Plaintiff believed that it was much lighter than it had been previously, but when he tried to look inside it, he was told to go back to his cell and check it there. SAC ¶ 32. When

---

[3]Plaintiff alleges that the legal box contained materials related to the following case: Commonwealth Court of Pennsylvania cases: 664 MD 2016 and 178 MD 2018; United States District Court for the Western District of Pennsylvania cases: 17-cv-038; 17-cv-39; 17-cv-0322; 17-cv-00323. SAC ¶ 22.

Plaintiff examined his belongings, he noticed that an "abundance of property" was missing. FAC ¶ 71.[4]

Upon noticing that some of his property was missing, Plaintiff spoke with Defendant Ferguson. *Id*. ¶¶ 71,73. During this conversation, Plaintiff alleges that Ferguson mentioned Plaintiff's history of filing complaints and stated, "Well I guess, now you got something real now to really grieve about." *Id*. ¶ 75.

In this suit, Plaintiff alleges that Defendants "planned, schemed, conspired" to "retaliate" against him during the move to SCI-Phoenix by "taking, trashing, and destroying" ten years of Plaintiff's legal materials. *Id.* ¶ 6. Plaintiff filed grievance number 748290 regarding his missing property. SAC ¶ 44. At some point in the grievance process, Plaintiff was offered $1,584.66 "or about" for the loss of his personal property. FAC ¶ 76.[5] Plaintiff rejected this offer and countered

---

[4] In his second amended complaint, Plaintiff specifies that he was missing "criminal and civil case files, interrogatories, sworn affidavits, declarations, search and arrest warrants, crime scene photos, and trial and sentencing transcripts and countless other priceless exhibits that were potentially capable of proving my innocence; about 1000 irreplaceable sentimental photos; commissary purchased belongings; outside purchased legal folders; outside purchased legal magnifier; ice cream and photo tickets." SAC ¶ 33.

Plaintiff also includes news articles reporting that many prisoners complained of loss, vandalism, or destruction of their personal property during the move from Graterford to Phoenix, presumably to bolster the credibility of Plaintiff's allegations. Appendix to SAC, Ex. E. At this stage, the Court accepts all factual allegations in the complaint as true and views them in the light most favorable to the Plaintiff, so while the Court takes notice of the articles, they are irrelevant to my analysis. *McTernan v. City of York, Penn*., 577 F.3d 521, 526 (3d Cir. 2009).

[5] The second amended complaint contains more details regarding this grievance history. The second amended complaint alleges that a Unit Manager offered him $1,584.66 for all non-legal property in July 2018, which Plaintiff did not accept. SAC ¶ 46. In August 2018, that offer was rescinded, and he was offered $268.00 instead. *Id*. ¶¶ 46-49. After rejecting the $268.00 offer, Plaintiff filed another grievance. *Id*. ¶ 50. In October 2018, his account was credited $95.50 for his lost property, which Plaintiff later requested be removed from his account. *Id*. ¶¶ 51-52. Plaintiff was advised that the Office of Chief Counsel would handle his missing legal materials and that the Office required clarification as to which documents were needed. Appendix to SAC, Ex. H. Plaintiff continued to correspond with the Office of Chief Counsel regarding the missing legal materials, but the complaint does not allege that he was successful in obtaining any documents. SAC ¶¶ 55-57. Plaintiff appended copies of his grievances to the second amended complaint as exhibits G-K.

with $5,000, telling the DOC to respond within 30 days.  *Id*.  ¶ 76; SAC ¶ 55.  DOC did not respond, leading to this action.  *Id*.  Plaintiff also filed a state tort action regarding the property loss in the Winter of 2019 or the Spring of 2020.  SAC ¶ 60.

Plaintiff's lost legal work allegedly pertained to a number of active cases Plaintiff was litigating and he contends that the loss of his legal materials caused him to be unsuccessful in those challenges.  Specifically, Plaintiff alleges that he was "unable to litigate" and ultimately forced to abandon a challenge to a past judgment regarding debt collection by Philadelphia County against Plaintiff.  FAC¶ 87.  Plaintiff also alleges that he was "hindered" and "obstructed" in his effort to file a meaningful malicious prosecution action as to his 2009 robbery and attempted murder conviction.  *Id*.  ¶ 88.  Further, he lost "significant" legal research for a potential PCRA claim that he was planning to pursue pending his wrongful conviction challenge.  *Id.* ¶ 89.  Finally, Plaintiff avers that he was "unable to prepare" meaningful responses to dispositive motions in his ongoing civil complaints against SCI-Forest prison officials.  *Id*. ¶¶ 91-94.  He cites his inability to file meaningful objections to judicial recommendations to dismiss his civil action complaints against SCI-forest unit managers for "repeated transfers" and retaliation in October 2018, because without his legal documents he was forced to rely only on his "best recollections."  *Id*. ¶¶ 91-92.  And he was similarly unable to meaningfully prepare answers to summary judgment motions in his other civil rights complaints against SCI-Forest officials.  *Id*. ¶¶ 93-94.

Defendants filed the pending Motion to Dismiss.  ECF 24.  Despite being granted a lengthy extension of time, Plaintiff has not responded.

**II.     Standard of Review**

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

**III.    Discussion**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff raises three § 1983 claims: First and Fourteenth Amendment access-to-courts claims; First Amendment retaliation claims; and Fourteenth Amendment Due Process claims. While it is fundamental that "prisons are not beyond the reach of the Constitution," Plaintiff's complaint will nevertheless be dismissed in its entirety, as it fails to state claims upon which relief could be granted. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984).

1. Access to the Courts Claim

Plaintiff's first claim is that the destruction of his legal property violated his First Amendment right of access to the courts, as he was rendered unable to litigate certain pending legal matters. Although there is no doubt that it is difficult for a pro-se litigant to be without his legal paperwork—particularly without the access to computers and information that is readily accessible to other litigants—this claim fails because Plaintiff is unable to demonstrate any actual injury or lost remedy.

Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Monroe v. Beard*, 536 F.3d 198, 205–06 (3d Cir. 2008). Incarcerated persons only have a right of access-to-courts claims in direct or collateral

6

challenges to their sentences and conditions of confinement. *Monroe*, 536 F. 3d at 205–06. To state a valid claim, a plaintiff must show "(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* Plaintiff's complaint must describe the underlying arguable claim sufficiently to "show that it is 'more than mere hope,'" and must also "describe the 'lost remedy'" to meet this pleading requirement. *Id.* at 205 (quoting *Christopher v. Harbury*, 536 U.S. 403, 416-17 (2002)).

The right of access to the courts does not extend to Plaintiff's debt case because it is neither a direct nor a collateral challenge to his sentence nor a challenge to the conditions of confinement. And even if the right of access to courts did reach far enough to encompass his debt case, review of the docket reveals that, while Plaintiff characterizes the case's dismissal as a "forced abandonment," Plaintiff's appeal to the Superior Court was actually dismissed in December 2018 based on his failure to file the proper docketing form.[6] *See Lawson v. Keirstead et. al*, Docket, Ex. A, ECF 23-3. Plaintiff's amended complaint contains no allegations that the DOC's loss of his property in July inhibited his ability to file a docketing form in December. This claim is dismissed with prejudice because amendment would be futile.

Plaintiff's claims regarding his challenges to his criminal cases are more difficult to parse. He alludes to the fact that his Philadelphia Court of Common Pleas conviction for attempted murder, CP-51-CR-0008851-2009, was either vacated and dismissed or reversed in 2018.[7] This

---

[6] Plaintiff's First Amended Complaint also references that he was "unable to litigate" the underlying case in the Court of Common Pleas, but the docket reflects that a judgment of non-pros was entered by the Court of Common Pleas in April 2018, several months before the complained of loss of property. *Lawson v. Keirstead et. al,* Docket, Ex. A, ECF 23-3.

[7] The First Amended Complaint alleges the conviction was reversed, ¶ 78-79, while the Second Amended Complaint states that it was vacated and dismissed, ¶ 63.

appears to be accurate. *Lawson v. Bloss,* No. 1:17-CV-38-SPB, 2019 WL 3369267, at *1 (W.D. Pa. July 26, 2019) (noting that the Commonwealth ultimately *nolle prossed* the criminal charges). He then states that, as a result of this outcome, he was researching and preparing to file "federal civil malicious prosecution action against the City of Philadelphia regarding April 17, 2008 wrongful arrest and October 9, 2009 resulting wrongful malicious prosecution." FAC ¶ 78. Such an action is a civil suit for damages. It neither directly attacks a conviction nor addresses conditions of confinement.[8] Under *Monroe,* it is not the type of action that would give rise to a claim for interference with access to the courts.

Plaintiff further alleges that his property loss impacted his ability to seek postconviction relief related to his Montgomery County conviction for robbery, burglary, and conspiracy, CP-46-CR-0000542-2009. Beyond alleging that he lost "researched and purchased LexisNexis case establishing plaintiff's clear right to judicial relief entitling resentencing," Plaintiff does not specify the documents or items that were lost, or how they would have impacted his ability to seek said relief. FAC. ¶ 89.[9] The allegations here are conclusory and do not provide details as to how his efforts have been hindered. *Monroe*, 536 F.3d at 206 (plaintiffs' allegations that "defendants confiscated their legal materials" and that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim)*; see also Thompson v. Ferguson,* Civ. A. No. 19-CV-3455,

---

[8] The Pennsylvania Superior Court, in an unpublished non-precedential decision, rejected as a matter of law his argument that his sentence should be different in light of his vacated conviction. *Commonwealth v. Lawson*, 2543 EDA 2018, J-S63034-19, https://www.pacourts.us/assets/opinions/Superior/out/J-S63034-19.pdf.

[9] Plaintiff's Letter to the Office of Chief Counsel, included in the appendix to the second amended complaint, contains a general description of all missing documents that Plaintiff wanted replaced. ECF 30, Ex. J. Neither the First nor Second Amended Complaint, however, specifies which lost documents were needed as to each claim or how lacking specific documents materially impeded his success.

2019 WL 4858270, at *5 (E.D. Pa. Oct. 2, 2019) (citing 42 Pa. C.S. § 9545(b)) (finding failure to state a plausible claim for denial of access to the courts where Petitioner has also "not alleged with any specificity how the absence of the destroyed documents was material to his success [in any state post-conviction proceeding] especially in consideration of the stringent legal standards that govern post-conviction challenges."). More importantly, the docket reflects that Plaintiff was able to file an amended PCRA complaint in 2021, indicating that there has been no "lost remedy." *Commonwealth of Pennsylvania v. Lawson*, Docket, CP-46-CR-0000542-2009, Ex. B, ECF 24-4. Review of the docket also indicates Plaintiff is now represented by counsel as to this claim. *Id*. Given that there has been no lost remedy, dismissal is with prejudice.

Further with respect to his Montgomery County conviction, Plaintiff states that the loss of his property has "made it practically impossible for [him] to show and/or demonstrate a clear right for DNA testing of the Montgomery County Common Pleas Court's June 1, 2011 Judgment of Sentence." FAC ¶ 90. It is far from clear why Plaintiff seeks DNA testing in state court. His complaint references that police "improperly . . . forcibly seized two separate samples of [Plaintiff's] DNA [w]hich . . . so-miraculously suddenly also matched the DNA evidence" discovered in the home invasion crime scene. *Id*. ¶ 80. Here, Plaintiff at least identifies specific missing documents purportedly relevant to his desire for further DNA testing: crime scene evidence log sheets, documented evidence regarding a recovered cell phone, police forensic reports, and a police interview. *Id.* ¶90. Nonetheless, without explaining why these documents are material, he has not described the "lost remedy," nor has he provided sufficient details to indicate that this claim is not frivolous. *Harbury*, 536 U.S. at 416. As the Supreme Court noted in *Harbury,* there is "a particular risk inherent in backward-looking claims" giving rise to a "need for care in requiring that the predicate claim be described well enough to apply the 'nonfrivolous'

9

test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* Whether the police "forcibly" secured a DNA sample has no bearing on whether it matched DNA from the crime scene. To the extent Plaintiff is implying that police planted his DNA at the crime scene, the evidence he deems essential consists of his copies from police files, records which would continue to exist. I see no basis on which to conclude that it is impossible for him to advance his argument. But in the final analysis, the likelihood that Plaintiff would succeed in persuading a state court to order repeat DNA is virtually nil and falls well short of the standard established in *Harbury*. Dismissal is therefore with prejudice.

Plaintiff further claims that the loss of his property has made him unable to meaningfully litigate his civil suits against SCI-Forest prison officials similarly fail. Plaintiff does not, as required by the pleading requirement, provide factual allegations to support a showing that his claims against prison officials were "arguable" or nonfrivolous. Moreover, Plaintiff does not specify or define which legal materials he lost or how they would have helped him to draft more meaningful responses in each case. The alleged loss of some of Lawson's legal materials, without more, is insufficient to state a plausible claim for a constitutional violation of the right to access the courts. *See Monroe*, 536 F.3d at 206. As Plaintiff fails to plead an injury or lost remedy that would support recovery, this claim is dismissed without prejudice.

2. <u>First Amendment Retaliation Claim:</u>

Plaintiff claims that Defendants destroyed his property in retaliation for having filed a series of grievances against prison officials. This claim fails as Plaintiff has not pleaded a causal connection between filing grievances and the loss of his property.

It is well-established that prison officials cannot retaliate against prisoners for the exercise of their First Amendment rights. *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990). To state

a claim for retaliation, a prisoner must allege that he: (1) engaged in constitutionally protected conduct, (2) "suffered some 'adverse action' at the hands of prison officials," and (3) "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take that action.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Retaliatory motive may be established by circumstantial evidence.  *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).  This evidence can include either an unusually suggestive temporal proximity between protected activity and the retaliatory action or a pattern of antagonism coupled with timing that suggests a causal link.  *Id.*

Here, Plaintiff undisputedly engaged in protected conduct; he has filed numerous grievances and civil actions against various prison officials.  For the purposes of the motion to dismiss, the Court assumes that prison officials did destroy Plaintiff's personal and legal property during the move to SCI-Phoenix, which certainly would constitute an adverse action at the hands of prison officials.  Plaintiff, however, has failed to plead that his constitutionally protected conduct was a substantial or motivating factor in the decision to destroy his property.

The temporal gap between when Plaintiff filed grievances and when the Defendants destroyed or lost his materials weighs against any finding that the destruction of his property was retaliatory.  The grievances referenced in Plaintiff's amended complaint were filed between 2014 and 2017, between one and four years before his materials were lost.  Plaintiff filed most of his grievances while incarcerated at SCI-Forest, cutting against a finding that prison officials at SCI-Graterford retaliated against him for filing grievances at a different facility.  Moreover, of the grievances described in the amended complaint, Plaintiff filed only one grievance against a defendant in his case, Officer Harriger; the rest of the myriad grievances are against parties not named as defendants in this case.

11

Plaintiff's retaliation claim against Defendant Harriger fails. While Plaintiff filed a grievance in 2014 alleging that Defendant Harriger seized and tampered with Plaintiff's legal materials while searching his cell, there is a gap of four years between this grievance and the alleged adverse action. This gap is too remote in time to be unusually suggestive of a retaliatory motive. *See Watson*, 834 F.3d at 423 (holding that a two-year delay between the protected activity and the alleged retaliatory conduct "is just too remote to suggest a retaliatory motive"). And Lawson's complaint is devoid of any allegations of other interactions between Plaintiff and Defendant Harriger that would indicate a pattern of antagonism towards Plaintiff from Defendant Harriger.

Similarly, Plaintiff has failed to plead a plausible connection between the protected conduct and the adverse action as it pertains to Defendant Thornton. Nothing in the pleadings suggests that Officer Thornton had reason to retaliate against Plaintiff for filing grievances years earlier and against prison employees at a different facility. Although Plaintiff alleges that prison officials generally sought to retaliate against him for being litigious, the fact that SCI-Forest and SCI-Graterford are under the DOC umbrella is insufficient to demonstrate a plausible connection between his use of the grievance system and the loss of his property. *See Singleton v. Robinson*, No. CV 14-2382, 2015 WL 5836016, at *4 (E.D. Pa. Oct. 7, 2015) (dismissing retaliation claim as implausible where plaintiff failed to allege "any personal connection" between retaliating defendant and the subjects of a grievance). Moreover, Petitioner has not pleaded any facts to indicate that Thornton was even aware that Plaintiff had filed other grievances in the past. *See Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir.2002) ("It is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct.")

Finally, Plaintiff's retaliation claim as to Defendant Ferguson also fails to state a claim. While Plaintiff does plead that Defendant Ferguson both spoke to Plaintiff about his history of filing grievances and also told him that he would "now [have]...something real... to really grieve about," this conversation happened *after* the loss of his property. This temporal proximity is insufficient, as the relevant period of analysis is the connection between the filing of grievances and the loss of property. *See Watson*, 834 F.3d at 423. As discussed above, the grievances were all filed at least one year before the transfer, with most of them filed two years prior against officials at a different prison. In addition, the complaint does not allege any prior interactions between Plaintiff and Ferguson that could demonstrate a pattern of antagonism. Moreover, prior to Plaintiff's prison transfer, Defendant Ferguson approved Plaintiff's request for an additional box to hold his legal materials. Finally, Plaintiff has alleged no facts showing that Defendant Ferguson was personally involved in transferring his belongings or anything to indicate that officers destroyed his property pursuant to her direction.

3. <u>Due Process Claim:</u>

Finally, Plaintiff claims that his due process rights were violated when his property was destroyed or lost. Plaintiff's due process claim fails, however, because he had an adequate post-deprivation alternative remedy through the Department of Corrections ("DOC") grievance procedure.

The Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. A prisoner's § 1983 claim based on "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the

Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

In Pennsylvania, the state prison system has established an internal grievance procedure through which the state hears claims and, when the state deems appropriate, provides remedies. Courts in this Circuit have consistently held that the Pennsylvania DOC's grievance procedure, which was in effect at Graterford and Phoenix, and was used by Plaintiff to file numerous grievances and appeals, provides an adequate post-deprivation remedy. *See, e.g., Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008) (finding the DOC's grievance process to be an adequate remedy); *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (same). Here, Mr. Lawson was provided with a post-deprivation remedy regarding the loss of his property in the form of the DOC's grievance system and Plaintiff has not alleged that the grievance system was unavailable to him.

Furthermore, Mr. Lawson cannot assert a plausible due process claim here because Pennsylvania law provides him with an adequate state remedy, as he could have, and in fact did, file a state tort claim. *See Hudson*, 468 U.S. at 535; *Hernandez v. Corr. Emergency Response Team,* 771 F. App'x 143, 145 (3d Cir. 2019) (non-precedential) (per curiam) ("Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy.").

Because Plaintiff had adequate post-deprivation remedies available to him, Plaintiff's due process claim for his lost property fails. Further amendment would not cure the amended complaint's deficiency, so Plaintiff's due process claims will be dismissed with prejudice. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (finding that futility is among the grounds that could justify a denial of leave to amend).

## IV.   Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss will be granted. Plaintiff's retaliation and due process claims will be dismissed with prejudice. Plaintiff's access to the court claims will all be dismissed with prejudice, except for his access to the court claim regarding his inability to litigate his ongoing civil suits against SCI-Forest prison officials, which will be dismissed without prejudice. Plaintiff is granted leave to amend, but *only* as to his claim with respect to civil suits against SCI-Forest prison officials if, consistent with this opinion, he can allege facts sufficient to support a claim of denial of access to the courts. Such amendment must occur within thirty days, and because of the many delays on the part of Mr. Lawson in prosecuting this case no extensions will be granted. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge